1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GENE CHITTENDEN, et al.,                    No.  2:16-cv-2401 MCE CKD PS

12                  Plaintiffs,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14   UNITED STATES OF AMERICA, et al.,

15                  Defendants.

16

17

18         Defendants the United States of America, the United States Forest Service, Thomas J.

19   Vilsack, Tom Tidwell, Tom Quinn, Forest Supervisor, Tahoe National Forest, Genice Froehlich,

20   Tahoe National Forest, and Dave Brown (collectively "defendants") motion to dismiss came on

21   regularly for hearing December 14, 2016.  ECF No. 9.  Plaintiffs Gene Chittenden and Allen Hall

22   (collectively "plaintiffs") appeared in propria persona.  Gregory Broderick appeared on behalf of

23   defendants.

24         Upon review of the documents in support and opposition, upon hearing the arguments of

25   plaintiffs and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

26   /////

27   /////

28   /////

1

1    I.     Background

2         A. Plaintiffs' Allegations

3         Plaintiffs allege that they hold rights to two unpatented mining claims in the Tahoe

4    National Forest, the "Roye-Sum" and "Dolliegeek" mines ("plaintiffs' mines").  ECF No. 1 at 5,

5    18, 24.  Plaintiffs allege further that plaintiff Hall received an email from defendant Dave Brown

6    on March 2, 2010, requesting plaintiffs allow "some Bat Experts" to enter plaintiffs' mines to

7    conduct a field survey.  Id. at 18.  Hall responded and declined Brown's request.  Id.  On March

8    18, 2010, Hall rejected a second request from Brown when he responded with the following: "I

9    cannot give you guys access."  Id.

10        Plaintiffs allege further that on or around July 6, 2010, Brown and several other

11   employees of the United States Forest Service "intentionally, and without permission, entered

12   Plaintiffs' Roye-Sum . . . claim" and decided to close both of plaintiffs' mines.  Id. at 19-20.

13   Plaintiffs allege further that they "were never notified of this Arbitrary and Capricious decision."

14   Id. at 20.

15        Plaintiffs also allege that on or around August 23, 2010, an employee of the United States

16   Forest Service "awarded to Sweetwater Construction the contract for the closure of [plaintiffs'

17   mines] with Bat Gates too small for a person to effectively move through and completely

18   impossible to work the mine."  Id. at 20-21.  Plaintiffs allege further that between August 23,

19   2010 and October 23, 2010, United States Forest Service employees installed "bat gates" at the

20   entrances to plaintiffs' mines, which consisted of "a concrete wall from side to side of the drift 30

21   feet inside the portal with a steel bar gate on top of the concrete and embedded in it."  Id. at 22-

22   23.  Plaintiffs allege that these bat gates "[e]ffectively clos[ed] the mine[s] and destroy[ed] the

23   complete haulage system in the drift."  Id. at 23.  Plaintiffs also allege that the United States

24   Forest Service employees "ripped out" plaintiffs' hoisting system in their mines and installed a

25   culvert in the mine shafts too small for plaintiffs to fit their equipment through, "thereby

26   rendering the shaft[s] unusable."  Id. at 23-24.  Plaintiffs allege that they did not consent to the

27   United States Forest Service or any other defendant engaging in these activities with regard to

28   plaintiffs' mines.  Id. at 24-25.

2

1    Plaintiffs allege further that they sent a letter to defendant Brown on or about February 24,

2    2012, demanding removal of the closures defendants put in place at the entrances to plaintiffs'

3    mines and to re-stabilize the hillside around the openings to those mines.  Id. at 22.  Defendant

4    Genice Froehlich responded to plaintiffs' letter on behalf of the United States Forest Service

5    notifying plaintiffs that "if [they] wanted to use the mine, [they] must provide her office 'with a

6    plan of operations and reclamation for the use of the surface resources and a bond for the

7    reinstallation of the Shaft and Drift closures."  Id.  On August 8, 2012, plaintiffs each filed an

8    administrative claim with the Forest Service for $250,000.00, but the Forest Service did not

9    respond to either of those claims within the applicable six month period.  Id.

10    Based on these allegations, plaintiffs assert the following six causes of action: (1) trespass;

11    (2) private nuisance; (3) negligence; (4) Fourteenth Amendment substantive due process; (5) Fifth

12    Amendment procedural due process; and (6) declaratory and injunctive relief.  Id. at 26-37.

13    B.  Procedural History

14    On July 8, 2013, plaintiffs filed a complaint in this court asserting claims against the

15    defendants named in this action arising from the same factual basis asserted in their present

16    complaint, including many of the same claims plaintiffs now assert in this action.  That earlier

17    action was dismissed on the basis that this court lacked subject matter jurisdiction over plaintiffs'

18    claims, which sounded in inverse condemnation, because the Court of Federal Claims held

19    exclusive jurisdiction over such claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).

20    Chittenden v. United States, 2013 WL 6199195 (E.D. Cal. Nov. 27, 2013).[1]

21    Plaintiffs subsequently filed an action in the Court of Federal Claims, which, in addition

22    to the claims asserted in this action, asserted a takings claim against defendants under the Fifth

23    Amendment.  See Chittenden v. United States, 126 Fed. Cl. 251 (2016), aff'd, 2016 WL 6301295

24    (Fed. Cir. Oct. 27, 2016).  The Court of Federal Claims granted summary judgment for

25    _____

26    [1] These findings and recommendations were adopted with regard to the recommendation to
dismiss this action for lack of jurisdiction.  Chittenden v. United States, 2014 WL 12570873

27    (E.D. Cal. Jan. 24, 2014).  The court takes judicial notice of the findings and recommendations
and order dismissing plaintiffs' prior case before this court sua sponte on the basis that they are

28    public court records not subject to reasonable dispute.  See Reyn's Pasta Bella, LLC v. Visa USA,
Inc., 442 F.3d 741, 746, n.6 (9th Cir. 2006); Fed. R. Evid. 201(b).

1    defendants in that action with regard to plaintiffs' takings claim, finding that plaintiffs failed to

2    present evidence showing that they owned a property interest in the land on which their mines

3    occupied, and, even if they did have such an interest, defendants' placement of the bat gates did

4    not constitute a taking of the mineral rights plaintiffs held pursuant to their unpatented mining

5    claims because those structures did not meaningfully bar plaintiffs from accessing the mines. Id.

6    That court also dismissed plaintiffs' other claims for lack of subject matter jurisdiction. Id. The

7    Federal Circuit Court of Appeals affirmed the Court of Federal Claims' decision on October 27,

8    2016. Chittenden v. United States, 2016 WL 6301295 (Fed. Cir. Oct. 27, 2016).[2]

9          II.      Legal Standards

10          In considering a motion to dismiss for failure to state a claim upon which relief can be

11   granted, the court must accept as true the allegations of the complaint in question, Erickson v.

12   Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the pleading in the light most favorable to the

13   plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

14          In order to avoid dismissal for failure to state a claim a complaint must contain more than

15   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

16   of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words,

17   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

18   statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim

19   upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A

20   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

21   the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct.

22   at 1949.

23          III.     Discussion

24          For their first and second causes of action, plaintiffs assert claims for trespass and private

25   nuisance. With regard to these claims, plaintiffs allege that United States Forest Service

26   _____

27   [2] The court takes judicial notice of the decisions issued by the Court of Federal Claims and the
     Federal Circuit Court of Appeals sua sponte on the basis that they are public court records not
     subject to reasonable dispute. See Reyn's Pasta Bella, LLC, 442 F.3d at 746, n.6; Fed. R. Evid.

28   201(b).

4

1    employees "intentionally, and without permission, entered the Plaintiffs' property and closed

2    [plaintiffs' mines'] shaft and drift which rendered the mines inaccessible for mining purposes,

3    and effectively destroyed the valuable mine workings." ECF No. 1 at 27. Plaintiffs allege further

4    that "[t]he destruction of the drift and shaft Materially Interferes with the Plaintiffs' ability to

5    access and engage in valuable mining operations," and that "the mine shaft and drift, can no

6    longer be used." Id. at 28. Based on these allegations, plaintiffs assert that the United States,

7    through the actions of the United States Forest Service, is liable for monetary damages for both

8    claims in an "amount that it would cost to restore the Shaft, and Drift on [plaintiffs' mines] to

9    their previous condition." Id. at 28-30. Plaintiffs assert both claims under the Federal Tort

10   Claims Act ("FTCA").

11        Defendants contend that these two causes of action are little more than an attempt to

12   characterize a claim for inverse condemnation under the Takings Clause of the Fifth Amendment

13   as tort claims in order to evade the fact that this court does not have jurisdiction over such a cause

14   of action. Defendants assert that the Court of Federal Claims has exclusive jurisdiction over such

15   a claim, regardless of how plaintiffs attempt to characterize it. Therefore, defendants argue,

16   plaintiffs' claims for trespass and private nuisance should be dismissed for lack of subject matter

17   jurisdiction. The court agrees with defendants.

18        The Ninth Circuit Court of Appeals has on multiple occasions held that a plaintiff cannot

19   merely recast what the allegations show to be a takings claim as a tort claim. Myers v. United

20   States, 323 F.2d 580, 583 (9th Cir. 1963) ("The repeated characterization by the appellants of the

21   taking by the United States as one of trespass and the commission of waste upon the lands in

22   question does not convert the claims to cases sounding in tort and thereby confer jurisdiction on

23   the District Court under the Federal Tort Claims Act."); see also Chuidian v. Philippine Nat.

24   Bank, 912 F.2d 1095, 1105 (9th Cir. 1990), abrogated on other grounds by Samantar v. Yousuf,

25   560 U.S. 305 (2010) ("We have previously rejected litigants' attempts to recharacterize takings

26   claims as tort claims."). In Meyers, the plaintiffs asserted a trespass claim against the United

27   States based on allegations that the United States had built a road that encroached on land

28   plaintiffs claimed to own under patents issued by the United States. 323 F.2d at 582. Despite the

5

1   plaintiffs' assertion of the claim as one for trespass, the Ninth Circuit determined that the factual

2   basis for and relief the plaintiffs sought through that claim sounded in the nature of a claim for

3   inverse condemnation under the Takings Clause of the Fifth Amendment.  Id. at 583.

4   Accordingly, the Ninth Circuit construed the plaintiffs' trespass claim as one for inverse

5   condemnation.  Id.

6        Similar to Meyers, the factual allegations of the complaint in this action sound in inverse

7   condemnation, and not the torts of trespass and private nuisance.  Here, the alleged factual

8   gravamen of plaintiffs' trespass and private nuisance claims is that the United States, by way of

9   the United States Forest Service and its employees, installed bat gates in the shafts of plaintiffs'

10   unpatented mining claims that completely restricted plaintiffs' access to those mines, "destroyed

11   [plaintiffs'] valuable mine workings," and "[i]nterfere[d] with the Plaintiffs' ability to access and

12   engage in valuable mining operations."  ECF No. 1 at 27-28.  Based on these alleged actions and

13   the resulting harm, plaintiffs seek relief in the form of $50,000 in monetary damages "for the

14   destruction of the valuable mine workings," and an order directing defendants to remove the bat

15   gates and restore the mines to their previous conditions.  Id. at 38-40.  Such an alleged factual

16   basis and requests for relief suggest that plaintiffs seek recovery against defendants under a

17   theory of inverse condemnation, not trespass or private nuisance.

18        Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive

19   jurisdiction to render judgment upon any claim against the United States for money damages

20   exceeding $10,000 that is "founded either upon the Constitution, or any Act of Congress or any

21   regulation of an executive department, or upon any express or implied contract with the United

22   States, or for liquidated or unliquidated damages in cases not sounding in tort."  "Accordingly, a

23   claim for just compensation under the Takings Clause must be brought to the Court of Federal

24   Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in

25   the relevant statute."  E. Enterprises v. Apfel, 524 U.S. 498, 520 (1998).  Congress has not

26   withdrawn the Tucker Act grant of jurisdiction with regard to plaintiffs' unpatented mining

27   claims at issue here.  See 30 U.S.C. § 22, et seq.  Because plaintiffs' tort claims sound in inverse

28   condemnation under the Takings Clause and plaintiffs seek over $10,000 in monetary damages,

1    the Court of Federal Claims has exclusive jurisdiction over those claims pursuant to the Tucker

2    Act,[3] and this court lacks subject matter jurisdiction over such claims.[4]  Therefore, plaintiffs' first

3    and second causes of action should be dismissed for lack of subject matter jurisdiction.

4               Plaintiffs argue in opposition that the Court of Federal Claims refused to hear their

5    trespass, private nuisance, negligence, and due process claims for lack of subject matter

6    jurisdiction and instructed them to refile those claims as a new action here.  Plaintiffs contend that

7    if the court here were to determine that it did not have jurisdiction over such claims, plaintiffs

8    would be without a forum to hear those claims as the Court of Federal Claims already dismissed

9    them for lack of subject matter jurisdiction.  However, as discussed above, plaintiffs' tort claims

10   for trespass and private nuisance are little more than a recasting of an inverse condemnation claim

11   under the Takings Clause.[5]  The Court of Federal Claims fully considered plaintiffs' inverse

12   condemnation claim on the merits when it granted defendants summary judgment as to that claim.

13   See Chittenden, 126 Fed. Cl. at 261-66 (2016).  Accordingly, plaintiffs' contention that they

14   would be without a forum for their tort claims if they were denied on the basis that this court

15   lacks jurisdiction is without merit.

16              Moreover, even if plaintiffs' trespass and nuisance claims did not sound in inverse

17   condemnation, the alleged facts of their complaint demonstrate that plaintiffs could not state

18   cognizable tort claims for trespass and private nuisance as a matter of law.  Plaintiffs allege in

19   their complaint that plaintiffs' mines are *unpatented* mining claims.  ECF No. 1 at 2.  "The holder

20   of an 'unpatented' [mining] claim has the right to extract and develop the mineral deposit, but

21   does not own the land."  Mills v. United States, 742 F.3d 400, 403, n.2 (9th Cir. 2014); see also

22

23   [3] Indeed, plaintiffs have already litigated a claim for inverse condemnation in the Court of Federal
     Claims based on the exact same factual predicate alleged here.  Chittenden, 126 Fed. Cl. 251.

24

25   [4] Even if this court had jurisdiction over plaintiffs' claim for inverse condemnation, the Court of
     Federal Claims' decision dismissing that same claim on the merits would bar this court from

26   consideration of that claim against defendants under the doctrine of claim preclusion.  See Owens
     v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001).

27

28   [5] Plaintiffs' other claims dismissed by the Court of Federal Claims for lack of subject matter
     jurisdiction that are also asserted in this action are addressed below.

1   Swanson v. Babbitt, 3 F.3d 1348, 1350 (9th Cir. 1993) ("Although ownership of a mining claim

2   does not confer fee title to the claimant, the claimant does have the right to extract all minerals

3   from the claim without paying royalties to the United States.").  Accordingly, as the Court of

4   Federal Claims determined in plaintiffs' case before that court, plaintiffs "have no ownership

5   interest in the land on which [their mining] claims are located."[6] Chittenden v. United States, 126

6   Fed. Cl. 251, 264 (2016), aff'd, 2016 WL 6301295 (Fed. Cir. Oct. 27, 2016).[7]  Rather, plaintiffs'

7   unpatented mining claims grant them only the right to extract and develop the mineral deposits in

8   their mines, but does not grant them fee title, and all the property rights flowing therefrom, in the

9   land those mines occupy.  See Mills, 742 F.3d at 403, n.2.  Furthermore, plaintiffs' mineral

10   interests are subject to the United States' regulatory authority over those interests.  See United

11   States v. Locke, 471 U.S. 84, 105 (1985) ("Claimants . . . must take their mineral interests with

12   the knowledge that the Government retains substantial regulatory power over those interests.").

13   /////

14   _____

15   [6] During the hearing on this matter, plaintiffs provided the court with a copy of the United States

16   Supreme Court case Clipper Mining Co. v. Eli Mining and Land Co., 194 U.S. 220 (1904).
     Plaintiffs assert that this case establishes that their alleged unpatented mining claims give
     plaintiffs the exclusive right of possession of the lands those claims are located on and forbids

17   anyone from entering them without committing a trespass.  See id. at 226.  However, here, unlike

18   in Clipper Mining Co., the alleged trespassers are United States Forest Service employees acting
     in their official capacities, not a private party.  The Supreme Court has more recently noted that,

19   under an amended version of the statute that conferred mining rights to the plaintiff in Clipper
     Mining Co., "[i]f a person locates a valuable mineral deposit on federal land, and perfects the

20   claim by properly staking it and complying with other statutory requirements, the claimant 'shall
     have the exclusive right of possession and enjoyment of all the surface included within the lines

21   of their locations,'" although the United States retains title to the land.  California Coastal

22   Comm'n v. Granite Rock Co., 480 U.S. 572, 575 (1987) (quoting 30 U.S.C. § 26) (emphasis
     added).  Accordingly, a claimant's rights with regard to the land on which an unpatented mining

23   claim sits are generally more limited in relation to the United States when compared to private
     actors, and the Supreme Court's statements in Clipper Mining Co. regarding trespass appear

24   inapplicable to the factual scenario alleged in plaintiffs' complaint.  Therefore, plaintiffs' citation
     to Clipper Mining Co. in support of their trespass claim against defendants is not well taken.

25

26   [7] Under the doctrine of issue preclusion, plaintiffs are bound by the Court of Federal Claims'
     factual determinations.  See, e.g., Taylor v. Sturgell, 553 U.S. 880, 892 (2008) ("Issue preclusion

27   . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid
     court determination essential to the prior judgment, even if the issue recurs in the context of a

28   different claim.").

Under California law, "[t]he essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." Civic W. Corp. v. Zila Indus., Inc., 66 Cal. App. 3d 1, 16 (Cal. Ct. App. 1977). In order to be able to state a cause of action for trespass, a plaintiff must be in actual possession of the land at issue. Lightner Mining Co. v. Lane, 161 Cal. 689, 694 (1911) ("It is a well-settled proposition that the proper party plaintiff in an action for trespass to real property is the person in actual possession."). Here, plaintiffs merely allege that they have two unpatented mining claims located in the Tahoe National Forest. Plaintiffs do not hold an ownership in or actual possession of that land, but merely a mineral interest in that land. Accordingly, plaintiffs cannot state a viable claim for trespass as a matter of law.

Plaintiffs' nuisance claim also is not cognizable as a matter of law. Under California law, a private nuisance is "a nontrespassory interference with the private use and enjoyment of land." San Diego Gas & Elec. Co. v. Superior Court, 13 Cal. 4th 893, 937 (1996) (citing Cal. Civ. Code §§ 3479-3481). In order to succeed on such a claim, a plaintiff must show that the invasion was "substantial, i.e., that it caused the plaintiff to suffer substantial actual damage," and "unreasonable, i.e., it must be of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." Id. at 938 (internal quotations omitted). As the Court of Federal Claims determined in plaintiffs' prior case before that court, the "installation of the bat gates has not denied the Plaintiffs meaningful access to their mining claims." Chittenden, 126 Fed. Cl. at 263-64. Accordingly, plaintiffs' allegations do not plausibly demonstrate that defendants' actions constituted a "substantial" invasion of plaintiffs' property right to extract and develop the mineral deposits in their mines, nor do they show that defendants' alleged interference was "unreasonable" for purposes of a private nuisance claim.

Therefore, even assuming plaintiffs' first and second causes of action did not sound in inverse condemnation, the allegations of the complaint do not give rise to cognizable claims for trespass and private nuisance under California law.

In their third cause of action, plaintiffs assert a claim for negligence, but the factual allegations supporting this claim are the same as those giving rise to their first and second causes of action. Indeed, plaintiffs' sole allegation as to defendants' purported negligence was that they

9

1  "*intentionally*, and without permission, destroyed the shaft[ ] and the drift by installing the bat

2  gate Closures" and blocked access to the mine.  ECF No. 1 at 32 (emphasis added).  Such an

3  allegation sounds in trespass or nuisance, both intentional torts, rather than negligence.  In

4  opposition, plaintiffs contend that they may pursue a claim for negligence because defendant

5  Dave Brown, acting in his capacity as a mineral officer for the United States Forest Service,

6  failed to use due care by ignoring the Forest Service handbook when he authorized the installation

7  of the bat gates on the mine, which caused other employees of the Service to engage in the actions

8  alleged in the complaint.  However, the essence of plaintiffs' factual allegations relating to their

9  negligence claim is that the United States, acting through the directives and actions of employees

10  of the United States Forest Service, intentionally and improperly installed bat gates on the mine

11  entrances that damaged plaintiffs' property rights.  As discussed above, such a claim lies in

12  trespass or nuisance, if not in inverse condemnation.  Because plaintiffs' negligence action is

13  entirely duplicative of their first two causes of action, neither of which this court has jurisdiction

14  over, plaintiffs' third cause of action should be dismissed.[8]

15      In their fourth and fifth causes of action, plaintiffs assert claims for violation of their

16  rights to substantive and procedural due process under the Fourteenth and Fifth Amendments,

17  respectively.  With regard to their substantive due process claim, plaintiffs allege that defendants

18  "choose [*sic*] a person other than the valid owners of the mine[s] as the valid claimant in violation

19  of the Forest Service manual at section 2813.11," thus resulting in an "Arbitrary and Capricious

20  decision as to the owner" of plaintiffs' mines.  ECF No. 1 at 33.  With regard to their procedural

21  due process claim, plaintiffs allege that defendants violated plaintiffs' rights by failing to provide

22  plaintiffs with sufficient notice regarding the Forest Service's administrative actions regarding

23  plaintiffs' mines, specifically the decision to place bat gates over the entrances to plaintiffs'

24  mines.  Id. at 34.

25  /////

26

27  _____

    [8] Alternatively, even assuming the court did have jurisdiction over plaintiffs' trespass and
    nuisance claims, plaintiffs factual allegations fail to support such causes of action, therefore
28  meaning plaintiffs' duplicative third cause of action is not cognizable for the same reasons.

Defendants assert that plaintiffs' due process claims are defective as a matter of law because both the United States and the United States Forest Service are protected from such claims by sovereign immunity, which extends to all of the individual defendants named in this action as they are alleged to have been acting solely in their official capacities.  The court finds defendants' arguments persuasive.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'"  Department of Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999) (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994)); United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  Under limited circumstances, a plaintiff may assert a claim directly under the Constitution against individual federal employees acting in their individual capacities.  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 421 (1971).  However, no such claim can be brought against either the United States itself or a federal agency.  FDIC v. Meyer, 510 U.S. 471, 473, 486 (1994).  Accordingly, plaintiffs' due process claims asserted directly under the Fifth and Fourteenth Amendments should be dismissed without leave to amend insofar as they are asserted against the United States and the United States Forest Service.

With regard to the individual defendants, plaintiffs specifically name them only in their official capacities. ECF No. 1 at 4-6.  A claim asserted directly under the Constitution can only be asserted against a federal employee in his or her individual capacity, and not in his or her official capacity.  Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987) (dismissing direct constitutional claims asserted against federal employees named in their official capacities because such causes of action "can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity").  Accordingly, plaintiffs' due process claims against the individual defendants named in the complaint are also barred as a matter of law, and, therefore, should be dismissed without leave to amend.

/////

/////

11

1    Because plaintiffs cannot assert due process claims directly under either the Fifth or

2    Fourteenth Amendments against any of the defendants named in the complaint, such claims

3    should be dismissed without leave to amend.

4    For their sixth cause of action, plaintiffs seek declaratory and injunctive relief based on

5    defendants' installation of the bat gates on plaintiffs' mines.  While plaintiffs appear to assert

6    their requests for declaratory and injunctive relief as independent claims, they also indicate that

7    they are asserting this cause of action under the Administrative Procedures Act ("APA").

8    Defendants argue that plaintiffs cannot assert their requests for declaratory and injunctive

9    relief as independent claims because such claims are not cognizable as a matter of law.

10   Defendants assert further that plaintiffs' sixth cause of action also fails as a matter of law insofar

11   as it is premised on the APA because defendants' alleged conduct does not constitute the sort of

12   "agency action" required to state a claim under the APA.  The court agrees.

13   Insofar as plaintiffs premise their sixth cause of action as independent claims for

14   declaratory and injunctive relief, it is not cognizable as a matter of law.  Santos v. Countrywide

15   Home Loans, 2009 WL 3756337, at *5 (E.D. Cal. Nov. 6, 2009) ("Declaratory and injunctive

16   relief are not independent claims, rather they are forms of relief.").

17   Furthermore, to the extent plaintiffs style their sixth claim as a challenge under the APA,

18   such a claim also fails as a matter of law.  A claim may be brought under the APA to challenge

19   "agency action."  See 5 U.S.C. § 551(13).  Under the APA, "agency action" means "the whole or

20   part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or

21   failure to act."  Id.  Here, plaintiffs allege in their sixth cause of action that the "agency action" at

22   issue is defendants' installation of the bat gates that "caused the destruction of the shaft and drift

23   on [plaintiffs' mines]."  ECF No. 1 at 35.  Such allegations, however, are insufficient to

24   demonstrate the sort of "agency action" required to state a claim under the APA.  As this court

25   noted with regard to plaintiffs' claim under the APA asserted in their previous action, "individual

26   agency actions alleged to be tortious are not properly brought under this statute."  Chittenden,

27   2013 WL 6199195, at *2.  Indeed, "[t]he APA's purpose is to provide administrative forum for

28   challenging administrative and regulatory agency action, not to provide forum for adjudicating

12

1    government tort liability."  <u>Doe v. Attorney General of United States</u>, 941 F.2d 780, 793 (9th Cir.

2    1991); <u>see also</u> <u>Aleck v. United States</u>, 2005 WL 1586939, *4 (D. Or. 2005) (trespass claim not

3    within definition of "agency action" under APA.  The "agency action" plaintiffs allege is exactly

4    the same conduct that forms the gravamen of their other claims, all of which sound in tort.

5    Accordingly, plaintiffs' allegations demonstrate that they cannot state a viable claim against

6    defendants under the APA as they cannot show that defendants' conduct constituted an "agency

7    action" within the meaning of that Act.  Thus, their sixth cause of action should be dismissed

8    without leave to amend.

9        IV.    <u>Conclusion</u>

10       In sum, plaintiffs' complaint fails to state a single cognizable cause of action against

11   defendants.  Moreover, the allegations of the complaint demonstrate that further amendment of

12   the complaint would be futile as the current defects of each of plaintiffs' claims asserted in that

13   pleading cannot be surmounted as a matter of law.  <u>See</u> <u>Moore v. Kayport Package Exp., Inc.</u>, 885

14   F.2d 531, 538 (9th Cir. 1989) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) ("In deciding

15   whether justice requires granting leave to amend, factors to be considered include the presence or

16   absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by

17   previous amendments, undue prejudice to the opposing party and *futility of the proposed*

18   *amendment*." (emphasis added)).

19       Accordingly, IT IS HEREBY RECOMMENDED that:

20       1.  Defendants' motion to dismiss (ECF No. 9) be granted and the complaint be dismissed

21           without leave to amend; and

22       2.  The Clerk of Court be directed to close this case.

23       These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

27   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

28   /////

within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.</u>

<u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 15, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 chittenden2401.mtd

14